Barbara Jo STILL *v.* STATE of Arkansas

CR 87-128                                   740 S.W.2d 926

Supreme Court of Arkansas
Opinion delivered December 14, 1987

*C.P. Christian*, for appellant.

*Steve Clark*, Att'y Gen., by: *Lynley Arnett*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, Barbara Jo Still, was convicted of first degree murder and sentenced to life imprisonment. The only point she presents on this appeal is that the evidence was not sufficient to sustain the conviction. We find the evidence to have been sufficient, and thus the conviction is affirmed.

Floyd Gibson, Jr., was living with Ms. Still when he disappeared early in 1986. Ms. Still informed Gibson's sister that he had just walked away one evening with suitcases and $14,000 in cash. Officer Gage of the Arkansas State Police investigated the disappearance and became suspicious of Ms. Still when he learned that she had withdrawn all but around $5,000 of the $64,000 which had been in Gibson's bank account which he held jointly with Ms. Still. He also learned that she had been accepting monthly $1,000 interest payments on a certificate of deposit owned by Gibson, and she had traded Gibson's pickup truck in on a new one. All of these things had occurred after the estimated date of death of Mr. Gibson which was late January, 1986.

When interviewed by officer Gage in April, 1986, Ms. Still told him the same story she had told Gibson's sister with respect to Gibson's disappearance. In May, she brought Gage a "farewell note" she said Gibson had written and left in her screen door. In September, pursuant to a search warrant, Gibson's body was unearthed in Ms. Still's front yard. It had been wrapped in a quilt and buried some 34 inches below ground. A prefabricated shed or garage type building had been placed over it. Ms. Still was charged with the murder.

In October, Ms. Still came to officer Gage and changed her story to state that Gibson had indeed left her on January 14, but he had returned on January 15. On that day, she said, he threatened her with a gun, saying that if she would not marry him he would kill her and then himself. She said she ran from the house into nearby woods and then heard a gunshot. When she returned to the house, Gibson lay dead in the floor with the gun nearby. She said she wrapped the body in a blanket and put it in her garbage. Later, she dragged the body out and buried it in the yard. She explained that she did not think she would be accused of any crime, and had buried Gibson in the yard because her first husband, who also had died from a gunshot, had been taken from her and buried in a place she could not visit.

Testimony of neighbors showed that Ms. Still had kept a fire going day and night from the end of January through February over the hole in her yard over which the building was eventually placed. The operator of the dump truck who had been summoned by her to fill the hole testified that he noted that there were old

timbers in the hole which should be removed before filling, but that Ms. Still was adamant in refusing to allow it, saying that the hole was the location of an old septic tank. One neighbor testified that she had admired the quilt, which was identified at the trial as the one in which the body was wrapped, and when she one day asked Ms. Still where it was Ms. Still had appeared to be shocked and said it had been stolen.

Dr. Malak, the state medical examiner, testified that the wound which killed Mr. Gibson was not of the sort associated with suicide, as the bullet, which entered between the eye and the ear, went from front to rear rather than from one side of the head to the other. The gun which Ms. Still produced as the one she found next to Gibson was shown by ballistics tests not to have been the weapon which killed him. No other gun was found.

### Sufficiency of the Evidence

Ms. Still's contention here is that the evidence against her was not sufficient to sustain her conviction because no one saw the killing, no murder weapon was found, and there was no evidence of any motive on her part.

Circumstantial evidence may be sufficient to sustain a conviction, as it may constitute substantial evidence. *Williams v. State*, 258 Ark. 207, 523 S.W.2d 377 (1975). Nor is there a requirement that the state prove the defendant had a motive to kill, *Parker v. State*, 290 Ark. 158, 717 S.W.2d 800 (1986), although the jury in this case could have attributed the act to greed, given the evidence of Ms. Still's financial dealings after Mr. Gibson's death. The appellant cites no authority which requires the production of a murder weapon as a predicate for conviction.

The jury had before it Ms. Still's admission of her bizarre behavior with respect to the burial of Gibson's body and evidence that she had attempted to burn the body, which the jury could have concluded was a further attempt to hide her crime. A defendant's false and improbable explanation of incriminating circumstances is admissible as proof of guilt. *Mayer v. State*, 285 Ark. 73, 685 S.W.2d 143 (1985); *Howard v. State*, 283 Ark. 221, 674 S.W.2d 936 (1984).

The jury had before it substantial evidence that Ms. Still killed Mr. Gibson. We have examined the record pursuant to Arkansas Supreme Court and Court of Appeals Rule 11(f), and we find no prejudicial error to which the appellant objected at the trial, thus the conviction is affirmed.