WAL-MART STORES, INC. *v.* Carolyn DOLPH

91-121                                            825 S.W.2d 810

Supreme Court of Arkansas
Opinion delivered February 24, 1992

*Wright, Lindsey & Jennings*, by: *Edwin L. Lowther, Jr.*, for appellant.

*Gill, Johnson & Gill*, for appellee.

ROBERT L. BROWN, Justice. The appellant, Wal-Mart Stores, Inc., appeals a jury verdict and judgement for slander in favor of the appellee, Carolyn Dolph, in the amount of $25,000. The sole issue raised on appeal is whether there was lack of

sufficient proof of publication of the slander. We hold that there was substantial evidence of publication to support the judgment, and we affirm it.

The events leading to the complaint occurred on June 16, 1989, at the Wal-Mart store in Dumas at about three o'clock on a Friday afternoon. Dolph had just gone through the check-out line and was attempting to leave the store when she was accosted near the exit by the loss-prevention officer for the store, Loretta McNeely. Dolph testified that McNeely told her that she knew that Dolph had been apprehended for shoplifting in McGehee the week before, and because of that she was not allowed to shop at any Wal-Mart store. McNeely made the accusation four times, according to Dolph. Dolph countered that McNeely was mistaken. McNeely did not believe her, but instead thought Dolph was going through a shoplifter's typical denial. They were arguing the point, according to Dolph, where people could hear, and she felt like she was on display "right in front of the store."

To resolve the matter, Dolph and McNeely moved to a nearby service area, and McNeely went into a mezzanine office to call the McGehee store. After telephoning McGehee, McNeely then "hollered down" questions to Dolph from the office, according to Dolph. During the time that McNeely was calling, Dolph believed that she was being watched by Wal-Mart employees and that she was not free to leave. McNeely then requested that Dolph come up to the office, but she refused and asked to see the manager. It turned out that McNeely was in error and that Dolph's sister — not Dolph — had been apprehended in McGehee for shoplifting. Dolph sued Wal-Mart for slander and was awarded the $25,000 verdict.

On appeal, Wal-Mart does not assert an absence of negligence in the shoplifting accusation. Rather, it argues that any slander that might have occurred was not published to a third party. On a collateral point, Wal-Mart contends that the circuit court erred in permitting inadmissible hearsay to support Dolph's publication argument.

We first consider whether substantial evidence exists to support the jury's verdict. We recently summarized what is required to make a substantial-evidence determination:

Substantial evidence is defined as that which is of sufficient force and character that it will compel a conclusion one way or another. It must force or induce the mind to pass beyond suspicion or conjecture. *Bank of Malvern* v. *Dunklin*, 307 Ark. 127, 817 S.W.2d 873 (1991). This court has stated that we must affirm if there is substantial evidence to support the judgment below. *Handy Dan Improvement Center, Inc.* v. *Peters*, 286 Ark. 102, 689 S.W.2d 551 (1985). Further, in testing the sufficiency of the evidence as being substantial on appellate review, we need only consider the testimony of the appellee and that part of the evidence which is most favorable to the appellee. *Love* v. *H. F. Construction Company*, 261 Ark. 831, 552 S.W.2d 15 (1977).

*Derrick* v. *New Mexico Chiquito*, 307 Ark. 217, 220, 819 S.W.2d 4 (1991). We have further held that circumstantial evidence may meet the substantial evidence test. *Hamlin Flying Service* v. *Breckenridge*, 275 Ark. 188, 628 S.W.2d 312 (1982).

■■ An essential element in any slander suit is an unprivileged publication of the slander to a third party. *Restatement, Second, Torts* § 558 (1977). In this case, there was no direct testimony from a third party who heard the slanderous statement by McNeely. The question, then, is whether sufficient circumstances existed to give rise to a reasonable inference that McNeely's accusation was overheard.

There is no Arkansas case directly on point, and we turn to other jurisdictions for guidance on this issue. In Rhode Island, the Supreme Court looked to the surrounding circumstances and the reasonable inferences that could be drawn from those facts. *Gaudette* v. *Carter*, 214 A.2d 197 (R.I. 1965). There, the issue was whether the defendant had been overheard by a third party at a public auction after a loud and heated exchange occurred between the parties, and the defendant called the plaintiff a thief. Those close by denied hearing the slander. The trial court directed a verdict for the defendant, but the Supreme Court reversed with these words: "Our holding is that an issue for jury determination arises if on the evidence, testimonial or otherwise, it may reasonably be inferred that the defamatory words were comprehensible to and uttered in the presence and hearing of a

third person, and this even in the face of a denial by that person that he heard the words." 214 A.2d at 200.

In a South Carolina case, a customer of the bank was falsely accused of "swindling" the bank by an assistant vice-president. *Duckworth* v. *First National Bank*, 176 S.E.2d 297 (S.C. 1970). The plaintiff testified that he knew that other customers heard the slander because "they were looking, they couldn't help it." 176 S.E.2d at 300. He added that there were customers of the bank around at all times and near enough to hear what was said. The court held that the issue of publication was properly submitted to the jury.

Lastly, in a Florida case, the district court of appeal held that there was sufficient evidence of publication when the circumstances showed that the words were uttered in a loud voice in the presence of others and under conditions and circumstances in which a loud voice would likely be heard. *Lombardie* v. *Flaming Fountain, Inc.*, 327 So. 2d 39 (Fla. App. 1976).

In the case before us, there was testimony of the shoplifting accusations made by McNeely within a few feet of the check-out counter and the exit where there was heavy customer traffic. There was further testimony by Dolph that she was sure people were listening to the argument between McNeely and her. She was on display in front of the whole store, Dolph stated, and was very embarrassed. Two Wal-Mart employees were specifically staring at her, Dolph testified, while McNeely was contacting the McGehee store and, then, hollering down at her for identification, and requesting that she come up to the office. We can make no clear distinction between this case and the foreign authorities cited above. The circumstances here were both sufficient to raise a reasonable inference of publication and also constitute substantial evidence to support the jury's verdict.

Wal-Mart also raises a collateral hearsay issue relating to publication. At trial, Dolph testified that her sister's mother-in-law had been told by one of the Wal-Mart employees that Dolph had been caught shoplifting. The circuit court permitted the testimony into evidence but gave the following cautionary instruction:

However, I need to instruct you that in this particular case,

the testimony of Ms. Dolph as to what someone else told her — and you heard the linkage of where it came from — is not being offered for the truth of what Ms. Dolph said was told to Ms. Dolph, but merely for the purpose of showing that she did, in fact, receive some information, whether true or not. And my instruction to you is, you are not to consider it as being given or stated here for the truth of what Ms. Dolph said, but merely to show that she heard something.

Wal-Mart argues that the circuit court erred in permitting what amounted to triple hearsay into evidence. We do not agree.

The Eighth Circuit Court of Appeals resolved a similar question in a libel case and held that the testimony in question was not hearsay. *See Luster* v. *Retail Credit Company*, 575 F.2d 609 (8th Cir. 1978). In *Luster*, the plaintiff sued Retail Credit for a false statement made in a credit report which suggested arson on the plaintiff's premises. To prove publication, plaintiff used the testimony of a third-party insurance agent who heard from a deceased agent that a Dallas insurance firm believed Retail Credit's report implied arson. A hearsay objection was made and rejected by the trial court which gave a limiting instruction at the time of the disputed testimony. The Eighth Circuit affirmed the trial court's ruling on the basis that the testimony was admitted solely to prove the fact that the words were said — not to prove that they were true.

The Eighth Circuit's reasoning in *Luster* is persuasive in this case which involves a comparable publication issue. Here, the testimony of the sister's mother-in-law about what the Wal-Mart employee said was not offered to prove the truth of what was said. It was offered to prove *the fact* that it was said, which then became some evidence of publication. The distinction is an important one, and we hold that the circuit court's ruling with the corollary instruction to the jury was appropriate in this case.

Affirmed.

DUDLEY, J., not participating.